1  Elizabeth J. Cabraser (State Bar No. 083151)
   ecabraser@lchb.com
2  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
4  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
5
   *Lead Counsel for Plaintiffs*
6

Robert J. Giuffra, Jr.
Sharon L. Nelles
William B. Monahan
giuffrar@sullcrom.com
nelless@sullcrom.com
monahanw@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

7  *Co-Liaison Counsel for the Volkswagen
   Group Defendants*

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  IN RE: VOLKSWAGEN "CLEAN DIESEL"
    MARKETING, SALES PRACTICES AND
14  PRODUCTS LIABILITY LITIGATION

15  This Documents Relates to:

16  ALL CONSUMER AND RESELLER
    ACTIONS
17

MDL 2672 CRB (JSC)

**CONSUMER CLASS ACTION
SETTLEMENT AGREEMENT AND
RELEASE (AMENDED)**

Hearing:  July 26, 2016
Time:  8:00 a.m.
Courtroom:  6, 17th floor

18

19  The Honorable Charles R. Breyer

20

21

22

23

24

25

26

27

28

**1.      THE PROPOSED SETTLEMENT**

In September 2015, the U.S. Environmental Protection Agency ("EPA") issued a notice of violation to Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. (collectively "Volkswagen"), alleging that certain 2.0-liter Volkswagen and Audi branded turbocharged direct-injection ("TDI") diesel vehicles in the United States were equipped with "defeat device" software designed to reduce the effectiveness of the vehicles' emission control systems with respect to nitrogen oxides ("NOx"). Starting in September 2015, owners, lessees, and dealers filed hundreds of lawsuits against Volkswagen in federal courts across the United States, which were consolidated in the United States District Court for the Northern District of California before the Honorable Charles R. Breyer (the "Action"). Judge Breyer appointed Lead Plaintiffs' Counsel, as well as a committee of plaintiffs' lawyers from law firms across the United States (referred to collectively as the Plaintiffs' Steering Committee ("PSC")), to oversee the litigation on behalf of affected owners, lessees, and dealers.

After months of negotiations facilitated by Court-appointed Settlement Master Robert Mueller III, former director of the Federal Bureau of Investigation, the Parties reached this Class Action Agreement to settle the claims of certain current and former owners and lessees of certain Volkswagen and Audi branded vehicles with 2.0-liter TDI engines ("Eligible Vehicles"). This Class Action Agreement does not apply to vehicles equipped with 3.0-liter engines, which are the subject of continued litigation in this Action.

This Class Action Agreement will become effective only if it is approved by the Court.

This Class Action Agreement is part of a coordinated effort among not only the Parties, but also the Federal Trade Commission ("FTC") and the United States Department of Justice ("DOJ"). In addition to this Agreement, Volkswagen is entering into a separate Consent Order with the FTC, and also a separate Consent Decree with the DOJ (acting on behalf of the EPA), the California Air Resources Board ("CARB"), and the California Attorney General ("CA AG").

As discussed in greater detail below, the Class Action Agreement, if approved by the Court, provides Class Members with two options: (1) under option one, Class Members who own an Eligible Vehicle can sell their car to Volkswagen and receive the Vehicle Value and a

1  restitution payment, and Class Members who lease an Eligible Vehicle can terminate their leases

2  without any penalty for early termination and receive a restitution payment; or (2) under option

3  two, Class Members who own or lease an Eligible Vehicle can have Volkswagen modify their

4  car's emissions system free of charge to reduce NOx emissions, and also receive a restitution

5  payment.  As explained in more detail below, Volkswagen must first obtain regulatory approval

6  for such emission modifications from the EPA and CARB.  Should Volkswagen fail to acquire

7  the necessary regulatory approvals, Class Members who own or lease Eligible Vehicles and

8  elected option two shall have the opportunity to sell their car or terminate their lease, or to

9  withdraw from the Class.  Certain Class Members who no longer own or lease an Eligible Vehicle

10 also will be entitled to certain restitution payments.  The details of all restitution payments for

11 Class Members are set forth in Exhibit 1, and more information will be made available on the

12 Settlement Website, www.VWCourtSettlement.com.  Only Class Members qualify to participate

13 in the Class Action Settlement Program.

14       Under this Class Action Agreement and the related FTC Consent Order, Volkswagen has

15 agreed to create one Funding Pool of $10.033 billion from which funds will be drawn to

16 compensate Class Members.  In addition, under the related DOJ Consent Decree, Volkswagen

17 will pay $2.7 billion to fully remediate any environmental effects of excess NOx emissions, and

18 will invest an additional $2.0 billion to create infrastructure for and promote public awareness of

19 zero emission vehicles ("ZEVs").

20       The ultimate goal of this agreement is to compensate owners or lessees of Eligible

21 Vehicles for any harm they suffered as a result of the emissions issues and to ensure that

22 Volkswagen's 2.0-liter TDI vehicles do not generate excess NOx emissions.

23 **2.    DEFINITIONS**

24       As used in this Class Action Agreement, including the attached Exhibits, the terms

25 defined herein have the following meanings, unless this Class Action Agreement specifically

26 provides otherwise.

27       2.1.    "2.0-liter TDI Matter" means (1) the installation or presence of any Defeat Device

28 or other auxiliary emission control device in any Eligible Vehicle; (2) the design, manufacture,

1  assembly, testing, or development of any Defeat Device or other auxiliary emission control

2  device used or for use in an Eligible Vehicle; (3) the marketing or advertisement of any Eligible

3  Vehicle as green, environmentally friendly, and/or compliant with state or federal emissions

4  standards; (4) the actual or alleged noncompliance of any Eligible Vehicle with state or federal

5  emissions standards; and/or (5) the subject matter of the Action, as well as any related events or

6  allegations, with respect to Eligible Vehicles.  For the avoidance of doubt, the 2.0-liter TDI

7  Matter does not encompass 3.0-liter TDI vehicles or claims relating to those vehicles.

8      2.2.    "Action" means the coordinated class, mass, and individual actions, however

9  named, that are coordinated pursuant to 28 U.S.C. § 1407 in the United States District Court for

10  the Northern District of California in *In re: Volkswagen "Clean Diesel" Marketing, Sales*

11  *Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672)

12  (the "MDL"), except that the Action does not include actions in the MDL brought under the

13  securities laws, for physical injury, on behalf of Volkswagen Dealers, or on behalf of competitor

14  dealerships not related to such competitor dealerships' purchase, sale or lease of Eligible

15  Vehicles.

16      2.3.    "Approved Emissions Modification" means a change to the emissions system of an

17  Eligible Vehicle that is proposed by Volkswagen and approved by the EPA and CARB, as set

18  forth in the DOJ Consent Decree.  The term "Emissions Modification" means a change to the

19  emissions system of an Eligible Vehicle that is proposed by Volkswagen, but has not yet been

20  approved by the EPA and CARB.

21      2.4.    "Approved Emissions Modification Option" means the option of an Eligible

22  Owner or Eligible Lessee under this Class Action Agreement to have his, her, or its Eligible

23  Vehicle modified pursuant to an Approved Emissions Modification, and to receive compensation,

24  as set forth in Section 4 and Exhibit 1.

25      2.5.    "Base Value" means, where available, the Clean Trade value of an Eligible

26  Vehicle based on the NADA Vehicle Identification Code ("VIC") for each Eligible Vehicle in the

27  September 2015 NADA Used Car Guide published in or about August 2015.  For Model Year

28  ("MY") 2015 Eligible Vehicles for which no value was published by NADA as of September

2015, Base Value is derived by multiplying the MSRP for each individual vehicle by 0.717, dropping any fractional amount, and then adjusting the amount for options. The method for calculating the Base Value for Eligible Vehicles is further detailed in Exhibit 1, paragraph 5.

2.6.    "Buyback" means the buyback process available under this Class Action Agreement by which an Eligible Owner may sell an Eligible Vehicle back to Volkswagen in exchange for certain compensation, as set forth in Section 4 and Exhibit 1.

2.7.    "Buyback Option" means the option of an Eligible Owner under this Class Action Agreement to have his, her, or its Eligible Vehicle bought back by Volkswagen through the Buyback, as set forth in Section 4 and Exhibit 1.

2.8.    "CARB" means the California Air Resources Board.

2.9.    "Claim" means the claim of any Class Member or his or her or its representative submitted on a Claim Form as provided in this Class Action Agreement.

2.10.    "Claim Form" means the document used to submit a Claim under this Class Action Agreement.

2.11.    "Claim Period" means the time period during which Class Members may submit a Claim for review to the Claims Supervisor and obtain benefits under the Class Action Settlement Program. The Claim Period shall run from entry of the Preliminary Approval Order until December 30, 2018. Class Members must submit a complete and valid Claim by no later than September 1, 2018, and, if eligible, shall have until December 30, 2018, to obtain their chosen remedy.

2.12.    "Claimant" means a Class Member who has completed and submitted a Claim Form, as set forth in more detail in Exhibit 4.

2.13.    "Claims Program" means the program through which Class Members may file Claims and, if eligible, obtain benefits under this Class Action Agreement, as described in Exhibit 4.

2.14.    "Claims Review Committee" or "CRC" means the committee approved by the Court to resolve disputed Claims, as set forth in Section 5.3 below.

2.15.    "Claims Supervisor" means the third-party agent agreed to by the Parties and

1  appointed by the Court to oversee the Claims process described in Section 5.2.  The Parties agree

2  that Ankura Consulting Group, LLC shall serve as Claims Supervisor, subject to approval by the

3  Court.

4       2.16.  "Class" means, for purposes of this Class Action Settlement only, a nationwide

5  class of all persons (including individuals and entities) who, on September 18, 2015, were

6  registered owners or lessees of, or, in the case of Non-Volkswagen Dealers, held title to or held

7  by bill of sale dated on or before September 18, 2015, a Volkswagen or Audi 2.0-liter TDI

8  vehicle in the United States or its territories (an "Eligible Vehicle," defined more fully in Section

9  2.33), or who, between September 18, 2015, and the end of the Claim Period, become a registered

10  owner of, or, in the case of Non-Volkswagen Dealers, hold title to or hold by bill of sale dated

11  after September 18, 2015, but before the end of the Claims Period, an Eligible Vehicle in the

12  United States or its territories. The following entities and individuals are excluded from the Class:

13      (a)  Owners who acquired ownership of their Volkswagen or Audi 2.0-liter TDI

14          vehicles after September 18, 2015, and transfer title before participating in the

15          Settlement Program through a Buyback or an Approved Emissions Modification;

16      (b)  Lessees of a Volkswagen or Audi 2.0-liter TDI vehicle that is leased from a

17          leasing company other than VW Credit, Inc.;

18      (c)  Owners whose Volkswagen or Audi 2.0-liter TDI vehicle (i) could not be driven

19          under the power of its own 2.0-liter TDI engine on June 28, 2016, or (ii) had a

20          Branded Title of Assembled, Dismantled, Flood, Junk, Rebuilt, Reconstructed, or

21          Salvage on September 18, 2015, and was acquired from a junkyard or salvage yard

22          after September 18, 2015;

23      (d)  Owners who sell or otherwise transfer ownership of their Volkswagen or Audi 2.0-

24          liter TDI vehicle between June 28, 2016, and September 16, 2016 (the "Opt-Out

25          Deadline"), inclusive of those dates;

26      (e)  Volkswagen's officers, directors and employees and participants in Volkswagen's

27          Internal Lease Program; Volkswagen's affiliates and affiliates' officers, directors

28          and employees; their distributors and distributors' officers, directors and

1    employees; and Volkswagen Dealers and Volkswagen Dealers' officers and

2    directors;

3    (f)    Judicial officers and their immediate family members and associated court staff

4    assigned to this case; and

5    (g)    All those otherwise in the Class who or which timely and properly exclude

6    themselves from the Class as provided in this Class Action Agreement.

7    2.17.    "Class Action Agreement" means this settlement agreement and the exhibits

8    attached hereto, including any subsequent amendments or any exhibits to such amendments.  The

9    Agreement may alternatively be referred to as the "Class Action Settlement."

10    2.18.    "Class Action Settlement Program" means the Buyback, Lease Termination,

11    Approved Emissions Modification, and Restitution Payment programs offered during the Claim

12    Period pursuant to this Class Action Agreement.

13    2.19.    "Class Counsel" means Lead Counsel and the PSC.

14    2.20.    "Class Member" means a member of the Class.

15    2.21.    "Class Notice Program" means the program for distributing information about the

16    Class Settlement to Class Members.

17    2.22.    "Class Representative" or "Settlement Class Representative" means a Plaintiff

18    named in the Complaint, who own(ed) or leas(ed) a Volkswagen or Audi 2.0-liter TDI Eligible

19    Vehicle, who meets the Class definition set forth in Section 2.16 of this Class Action Agreement,

20    and who has agreed to represent the Class for purposes of obtaining approval of, and effectuating,

21    this Class Action Agreement, as listed in the moving papers submitted for preliminary approval of

22    this Class Action Agreement.

23    2.23.    "Complaint" means the Consolidated Consumer Class Action complaint filed in

24    the Action on February 22, 2016, ECF No. 1230.

25    2.24.    "Court" means the United States District Court for the Northern District of

26    California, San Francisco Division.

27    2.25.    "Defeat Device" has the same meaning as in 40 C.F.R. § 86.1803-01 or 42 U.S.C.

28    § 7522(a)(3)(B).

1    2.26.    "DOJ" means the United States Department of Justice.

2    2.27.    "DOJ Consent Decree" means the consent decree lodged with the Court on or

3    about June 28, 2016, as agreed by (1) the United States on behalf of the Environmental Protection

4    Agency; and (2) the People of the State of California, by and through CARB and the Attorney

5    General of California; and (3) Volkswagen, resolving certain aspects of the disputes between

6    those parties on the terms described therein.

7    2.28.    "Effective Date" means the date the Court enters the Final Approval Order, the

8    FTC Consent Order, or the DOJ Consent Decree, whichever is latest.

9    2.29.    "Eligible Lessee" means (1) the current lessee or lessees of an Eligible Vehicle

10   with a lease issued by VW Credit, Inc.; (2) the former lessee or lessees of an Eligible Vehicle

11   who had an active lease issued by VW Credit, Inc. as of September 18, 2015 and who surrendered

12   or surrenders the leased Eligible Vehicle to Volkswagen; or (3) the owner of an Eligible Vehicle

13   who had an active lease issued by VW Credit, Inc. as of September 18, 2015, and who acquired

14   ownership of the previously leased Eligible Vehicle at the conclusion of the lease after June 28,

15   2016.  For avoidance of doubt, no person shall be considered an Eligible Lessee by virtue of

16   holding a lease issued by a lessor other than VW Credit, Inc.

17   2.30.    "Eligible Owner" means the registered owner or owners of an Eligible Vehicle on

18   June 28, 2016, or the registered owner or owners who acquire an Eligible Vehicle after June 28,

19   2016, but before the end of the Claim Period, except that the owner of an Eligible Vehicle who

20   had an active lease issued by VW Credit, Inc. as of September 18, 2015, and purchased an

21   Eligible Vehicle previously leased by that owner after June 28, 2016, shall be an Eligible Lessee.

22   A Non-Volkswagen Dealer who, on or after June 28, 2016, holds title to or holds by bill of sale

23   an Eligible Vehicle in the United States or its territories shall qualify as an Eligible Owner

24   regardless of whether that Non-Volkswagen Dealer is registered as the owner of the Eligible

25   Vehicle, provided that the Non-Volkswagen Dealer otherwise meets the definition of Eligible

26   Owner.  For avoidance of doubt, an Eligible Owner ceases to be an Eligible Owner if he transfers

27   ownership of the Eligible Vehicle to a third party on or after June 28, 2016; and a third party who

28   acquires ownership of an Eligible Vehicle on or after June 28, 2016, thereby becomes an Eligible

1   Owner if that third party otherwise meets the definition of an Eligible Owner.  An owner of an

2   Eligible Vehicle will not qualify as an Eligible Owner while the Eligible Vehicle is under lease to

3   any third party, although any such owner, including any leasing company other than VW Credit,

4   Inc., who otherwise meets the definition of an Eligible Owner would become an Eligible Owner if

5   such lease has been canceled or terminated and the owner has taken possession of the vehicle.  In

6   exceptional cases, specific arrangements may be made with the leasing company, in consultation

7   with the Claims Supervisor, such that, (1) without canceling or terminating the lease, the leasing

8   company may be treated as an Eligible Owner and obtain an Approved Emissions Modification

9   and Owner Restitution and (2) a lessor that takes possession of a leased Eligible Vehicle after the

10  September 1, 2018, Claim submission deadline (or the December 30, 2018, end date of the Claim

11  Program) may nonetheless be entitled to submit a Claim.

12      2.31.  "Eligible Seller" means a person who purchased or otherwise acquired an Eligible

13  Vehicle on or before September 18, 2015, and sold or otherwise transferred ownership of such

14  vehicle after September 18, 2015, but before June 28, 2016.  For avoidance of doubt, Eligible

15  Seller includes any owner (1) who acquired his, her, or its Eligible Vehicle on or before

16  September 18, 2015, (2) whose Eligible Vehicle was totaled, and (3) who consequently

17  transferred title of his, her, or its vehicle to an insurance company after September 18, 2015, but

18  before June 28, 2016.

19      2.32.  "Eligible Seller Identification Period" means the time period in which an Eligible

20  Seller must identify himself, herself, or itself, by (1) electronic registration on the Settlement

21  Website or (2) submission of an Eligible Seller identification form by mail or fax.  The Eligible

22  Seller Identification Period will last at least 45 days from entry of the Preliminary Approval

23  Order.  If the Court enters the Preliminary Approval Order on July 26, 2016 (the date of the

24  preliminary approval hearing), the Eligible Seller Identification Period will run until September

25  16, 2016, the same date as the Opt-Out Deadline. Eligible Sellers who do not identify themselves

26  during that time period will not be eligible for a Restitution Payment under this Class Action

27  Agreement.

28      2.33.  "Eligible Vehicle" means Model Year 2009 through 2015 Volkswagen and Audi

light-duty vehicles equipped with 2.0-liter TDI engines that (1) are covered, or purported to be covered, by the EPA Test Groups in the table immediately below this paragraph; (2) are, at any point during the period September 18, 2015 to June 28, 2016, registered with a state Department of Motor Vehicles or equivalent agency or owned by a Non-Volkswagen Dealer in the United States or its territories that (a) holds title to the vehicle or (b) holds the vehicle by bill of sale; (3) for an Eligible Owner, are currently Operable or cease to be Operable only after the Opt-Out Deadline; and (4) have not been modified pursuant to an Approved Emissions Modification. Eligible Vehicle also excludes any Volkswagen or Audi vehicle that was never sold in the United States or its territories.

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta SportWagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta SportWagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta SportWagen |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf SportWagen, VW Jetta, VW Passat, Audi A3 |

2.34.    "EPA" means the United States Environmental Protection Agency.

2.35.    "Escrow Account" means the escrow account managed by the Escrow Agent, which shall be the sole escrow account for compensation of Class Members under the Class Action Agreement, FTC Consent Order, and DOJ Consent Decree.

2.36.    "Escrow Agent" means the agreed-upon entity to address and hold for distribution the funds identified in this Class Action Agreement pursuant to the terms of the Escrow Agreement.  The Parties agree that Citibank Private Bank shall serve as Escrow Agent, subject to approval by the Court.

2.37.    "Escrow Agreement" means the agreement by and among Class Counsel and

1  Volkswagen's Lead Counsel with respect to the escrow of the funds to be deposited into the

2  Escrow Account pursuant to this Class Action Agreement.

3        2.38.  "Fairness Hearing" means the hearing held by the Court for the purpose of

4  determining whether to approve this Class Action Agreement as fair, reasonable, and adequate.

5        2.39.  "Final Approval Order" or "Final Order and Judgment" means the Court's order

6  approving the Class Action Settlement.

7        2.40.  "FTC" means the Federal Trade Commission.

8        2.41.  "FTC Consent Order" means the order entered by this Court by the consent of the

9  FTC and Volkswagen, resolving certain aspects of the disputes between those parties on the terms

10  described therein.

11        2.42.  "Funding Pool" means the maximum $10,033,000,000 funding pool from which

12  Class Members will be compensated and is the same funding pool described in the FTC Consent

13  Order and the DOJ Consent Decree.  The Funding Pool is based on an assumed 100% Buyback of

14  all purchased Eligible Vehicles and 100% Lease Termination of all leased Eligible Vehicles.  The

15  Funding Pool includes (1) $42,670,723 designated for loan forgiveness for Eligible Owners who

16  choose a Buyback and who owe more on their Eligible Vehicles than they would receive in the

17  Buyback, as described in Exhibit 1 (the "Loan Forgiveness Designated Fund"); (2) $26,000,000

18  designated to pay remaining future lease payments previously owed to VW Credit, Inc. as the

19  lessor of leased Eligible Vehicles held by lessees choosing Lease Termination (the "Future Lease

20  Payments Designated Fund"); and (3) $9,964,329,277 to pay Vehicle Value, Owner Restitution,

21  Lessee Restitution, and Seller Restitution as described in Exhibit 1 (the "Principal Fund").  The

22  Loan Forgiveness Designated Fund, Future Lease Payments Designated Fund, and Principal Fund

23  are not available for any funding purpose other than their respective purposes stated above, and

24  Volkswagen shall retain any such funds not expended for these designated purposes. The Funding

25  Pool shall be capped at $10,033,000,000, regardless of the rate of consumer participation in the

26  Settlement Program, and Volkswagen shall not be required to increase the Funding Pool.  Any

27  unspent portion of the Funding Pool will belong to Volkswagen upon the completion of the Class

28  Action Settlement Program.

2.43.   "Lead Plaintiffs' Counsel" means Elizabeth Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP, who was appointed by the Court on January 21, 2016.

2.44.   "Lease Termination" means the process by which an Eligible Lessee may have the lease for his, her, or its Eligible Vehicle terminated, without paying an early termination penalty, as described in more detail in Section 4 and Exhibit 1.

2.45.   "Lease Termination Option" means the option of an Eligible Lessee to have the lease for his, her, or its Eligible Vehicle terminated through the Lease Termination, without paying an early termination penalty, as described in more detail in Section 4 and Exhibit 1.

2.46.   "Lessee Restitution" means monetary compensation that Volkswagen will pay to Eligible Lessees who do not opt out of the Class, in addition to the Lease Termination or Approved Emissions Modification, as determined by the formula set forth in Section 4 and Exhibit 1.

2.47.   "Loan Obligation" means any debt incurred by an Eligible Owner and secured by an Eligible Vehicle, whether through VW Credit, Inc. or any other lender.

2.48.   "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 3.

2.49.   "Notice Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court to implement and consult on Class Notice.  The Parties agree that Kinsella Media, LLC shall serve as Notice Administrator, subject to approval by the Court.

2.50.   "Operable" means a vehicle that can be driven under its own 2.0-liter TDI engine power.  A vehicle is not Operable if it had a Branded Title of Assembled, Dismantled, Flood, Junk, Rebuilt, Reconstructed, or Salvaged on September 18, 2015, and was acquired by any person or entity from a junkyard or salvage yard after September 18, 2015.

2.51.   "Opt-Out Deadline" means the last day a Class Member may opt out of the Class Action Settlement, which is September 16, 2016, for all Class Members who are Class Members as of that date.  Individuals and entities that purchase an Eligible Vehicle on or after September 16, 2016, shall have all the rights, privileges, and responsibilities of Class Members, and shall

have 30 days from the date of their purchase to opt out of the Class. Additionally, because the remedies available to Class Members include a contingent option, if there is no Approved Emissions Modification available for a Class Member's Eligible Vehicle by May 1, 2018, that Eligible Owner or Lessee shall have a second opportunity, from May 1, 2018, until June 1, 2018, to withdraw from the Class Action Settlement.

2.52. "Owner Restitution" means monetary compensation that Volkswagen will pay to Eligible Owners who do not opt out of the Class, in addition to the Vehicle Value Payment or Approved Emissions Modification, as determined by the formula set forth in Exhibit 1.

2.53. "Parties" means the Class Representatives and Volkswagen, collectively, as each of those terms is defined in this Class Action Agreement.

2.54. "Plaintiffs' Steering Committee" or "PSC" means those counsel appointed to the Plaintiffs' Steering Committee by the Court in this Action on January 21, 2016. Lead Counsel is Chair of the PSC.

2.55. "Post-Appeal Date" means the latest date on which the Final Approval Order approving this Class Action Agreement becomes final. For purposes of this Class Action Agreement:

    2.55.1.  if no appeal has been taken from the Final Approval Order, "Post-Appeal Date" means the date on which the time to appeal therefrom has expired; or

    2.55.2.  if any appeal has been taken from the Final Approval Order, "Post-Appeal Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc* and petitions for a writ of *certiorari* or any other form of review, have been fully disposed of in a manner that affirms the Final Approval Order; or

    2.55.3.  if Class Counsel and Volkswagen agree in writing, the "Post-Appeal Date" can occur on any other earlier agreed date.

2.56. "Preliminary Approval Order" means the order that may, at the discretion of the Court, be entered by the Court preliminarily approving the Class Action Settlement as outlined in

- 13 -

Section 3 of this Class Action Agreement.

2.57. "Release" means the release and waiver described in Section 9 of this Class Action Agreement and in the Final Approval Order. In addition, Class Members who participate in the Buyback, Lease Termination, and Restitution Program, or the Approved Emissions Modification and Restitution Program, or otherwise receive a Restitution Payment pursuant to this Class Action Agreement, will execute an Individual Release as described in Section 9.7 of the Class Action Agreement, and that Individual Release will remain valid even if the Final Approval Order is later reversed and/or vacated on appeal.

2.58. "Released Party" or "Released Parties" has the definition set forth in Section 9.2 of this Class Action Agreement.

2.59. "Restitution Payment" or "Restitution Payments" means the Owner Restitution, Lessee Restitution, and Seller Restitution payments, separately or collectively.

2.60. "Seller Restitution" means monetary compensation that Volkswagen will pay to Eligible Sellers who do not opt out of the Class, as determined by the formula set forth in Exhibit 1.

2.61. "Settlement Master" means Robert Mueller III, who was appointed by the Court to serve as Settlement Master to administer, coordinate, and preside over settlement-related proceedings.

2.62. "Settlement Website" means the public website that provides information and key filings regarding the Class Action Settlement, including FAQs, and at which Class Members will, after entry of the Preliminary Approval Order, be able to access a "Claims Portal," which will allow a Class Member to complete and submit an online Claim Form, and/or obtain a description of the remedies available to the Class Member, including, as applicable: (1) the amount of the Vehicle Value; (2) details concerning the Lease Termination; (3) the amount of the Restitution Payment; (4) a tool for the Class Member to determine the effect of mileage on the Vehicle Value; and (5) details concerning the Approved Emissions Modification, if any, for the Eligible Vehicle. The Claims Portal will be available to begin the registration and submission process upon entry of the Preliminary Approval Order, but no Claim will be considered submitted until

1   entry of the Final Approval Order.

2          2.63.   "Short Form Notice" means the Short Form Notice substantially in the form as

3   attached hereto as Exhibit 2.

4          2.64.   "Vehicle Value" means an Eligible Vehicle's Base Value adjusted for options and

5   mileage, as set forth in Exhibit 1.

6          2.65.   "Volkswagen," "VW," or "Volkswagen Entities" means Volkswagen AG, Audi

7   AG, and Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc. or Audi of

8   America, Inc.).

9          2.66.   "Volkswagen Dealer" means any authorized Volkswagen or Audi dealer located in

10  the United States and Puerto Rico as evidenced by a current and valid Dealer Sales and Service

11  Agreement.  "Non-Volkswagen Dealer" means any automobile dealer in business as of June 28,

12  2016 that is located in the United States and Puerto Rico other than a Volkswagen Dealer.

13         2.67.   "Volkswagen's Internal Lease Program" means the program through which

14  employees and retirees may lease vehicles from Volkswagen for themselves and certain members

15  of their families.  For purposes of this agreement, "participants" in Volkswagen's Internal Lease

16  Program shall include anyone for whom a vehicle is leased under the program.

17         2.68.   "Volkswagen's Lead Counsel" means Robert J. Giuffra, Jr. and Sharon L. Nelles

18  of Sullivan & Cromwell LLP.

19         2.69.   "VW Class Update" means the notice that will be provided by Volkswagen when

20  (1) an Approved Emissions Modification becomes available for any make, model, and model year

21  of an Eligible Vehicle or (2) it is determined that an Approved Emissions Modification will not

22  become available for any particular make, model, or model year of an Eligible Vehicle.

23  Volkswagen will provide the VW Class Updates to Class Counsel for comment prior to releasing

24  them.  Once final, the VW Class Update(s) will be distributed by First-Class U.S. Mail, postage

25  paid.

26         2.70.   "VW Credit, Inc." means VW Credit, Inc., including VW Credit, Inc. d/b/a

27  Volkswagen Credit and Audi Financial Services.

28         2.71.   Other capitalized terms used in this Class Action Agreement but not defined in this

1    Section shall have the meanings ascribed to them elsewhere in this Class Action Agreement.

2        2.72.   The term "he or she" and "his or her" include "it" or "its" where applicable.

3    **3.    PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION**

4        3.1.   Promptly after this Agreement is signed, but by no later than June 28, 2016, the

5    Parties shall file the Agreement with the Court, together with a Motion for Preliminary Approval

6    of the Class Action Agreement and Approval of Class Notice.  Simultaneously, the Class

7    Representatives shall move for certification of the Class for settlement purposes only, pursuant to

8    Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(a), 23(b)(3), and 23(e).  It is expressly

9    agreed that any certification of the Class shall be for settlement purposes only, and Volkswagen

10   does not waive any arguments that it may have that class certification for any other purpose

11   would be improper.

12       3.2.   The Parties agree to take all actions and steps reasonably necessary to obtain a

13   Preliminary Approval Order from the Court.

14   **4.    CONSUMER COMPENSATION AND REMEDIES**

15       4.1.   Except as otherwise provided in this Class Action Agreement, Eligible Owners

16   and Eligible Lessees who do not opt out of the Class have two different options under the Class

17   Action Agreement:  (1) a Buyback or Lease Termination Option; or (2) subject to regulatory

18   approvals, an option to have their emissions systems modified free of charge by Volkswagen to

19   reduce NOx emissions (the Approved Emissions Modification Option).  Both options include a

20   Restitution Payment, which will be the same regardless of which option the Class Member

21   selects.  In other words, Eligible Owners and Eligible Lessees may sell or surrender their Eligible

22   Vehicle to Volkswagen and also receive a Restitution Payment, or they may have their Eligible

23   Vehicle modified for free by Volkswagen and receive the same Restitution Payment. The

24   Buyback/Lease Termination and Approved Emissions Modification Options are described more

25   fully in Exhibit 1 to this Class Action Agreement, and summarized in this Section 4. An estimate

26   of the range of compensation available through the Class Action Settlement, including Vehicle

27   Value and Restitution Payments, is provided in Exhibit 6.

28       4.2.   **Class Action Buyback, Lease Termination, and Restitution Program**

4.2.1.  **Buyback.** Eligible Owners who do not opt out of the Class can sell their car back to Volkswagen for the Vehicle Value, which is determined by (i) taking the September 2015 NADA Clean Trade value, or, where no value was published by NADA as of September 2015, a calculation based on each individual vehicle's MSRP and (ii) making adjustments for options and mileage. If this Class Action Agreement is approved, Volkswagen will not buy back any vehicle under the Class Action Agreement, DOJ Consent Decree, or FTC Order without receiving a Release, as described in Section 9.

4.2.2.  **Owner Restitution.** Eligible Owners who sell their Eligible Vehicles to Volkswagen under the terms of this Class Action Agreement will, in addition to the Vehicle Value payment, be entitled to an Owner Restitution payment calculated based on a percentage of the Vehicle Value, plus a fixed component. For Eligible Owners with Loan Obligations, some or all of the Vehicle Value and Owner Restitution will be paid directly to such Eligible Owners' lenders. Subject to the conditions described in more detail in Exhibit 1, Eligible Owners will be eligible for Loan Forgiveness in an amount up to 30% of the sum of the Vehicle Value and the Owner Restitution payment. Certain former owners who sold or transferred ownership of their Eligible Vehicles after September 18, 2015, but before June 28, 2016 (*i.e.*, Eligible Sellers), will be entitled, if they do not opt out of the Class, to a portion of the Owner Restitution for their Eligible Vehicles. Any owner whose Eligible Vehicle was totaled and who consequently transferred title of his, her, or its vehicle to an insurance company on or after the Opt-Out Deadline, but before the end of the Claim Period, will be entitled to Owner Restitution but not a Buyback payment. For more information about the Buyback and Owner Restitution available pursuant to the Class Action Agreement,

1             see Exhibit 1. For information regarding the timeframe to submit a Claim,

2             please refer to the Claim Period definition in Section 2.11.

3        4.2.3.   **Lease Termination.** Eligible Lessees who do not opt out of the Class

4             and retain an active lease of an Eligible Vehicle can terminate their leases

5             with no penalty for early termination.

6        4.2.4.   **Lessee Restitution.** Eligible Lessees who terminate their leases pursuant

7             to this Class Action Agreement will be entitled to a Lessee Restitution

8             payment calculated based on a percentage of the Vehicle Value, plus a

9             fixed component (the percentages and fixed components used to calculate

10            Lessee Restitution will be different than those used to calculate Owner

11            Restitution). If they do not opt out of the Class, Eligible Lessees whose

12            leases terminated after September 18, 2015 and who do not own an

13            Eligible Vehicle will be entitled to Lessee Restitution. Eligible Lessees

14            who previously leased an Eligible Vehicle and obtained ownership after

15            June 28, 2016 may obtain an Approved Emissions Modification, if

16            available, plus Lessee Restitution. For more information about the Lease

17            Termination and Lessee Restitution available under this Class Action

18            Agreement, see Exhibit 1.

19    4.3.   **Class Action Approved Emissions Modification and Restitution Program**

20        4.3.1.   **Approved Emissions Modification.** As set forth more fully in

21             Appendix B to the DOJ Consent Decree, Volkswagen may apply for, and

22             if approved by the EPA and CARB, shall offer to Eligible Owners and

23             Eligible Lessees who own or lease an Eligible Vehicle at or after the time

24             of approval, an Approved Emissions Modification. As set forth in the

25             DOJ Consent Decree, the EPA and CARB will either approve or

26             disapprove an Emissions Modification for each generation of engines

27             depending on certain factors, such as the effect of the proposed Emissions

28             Modification on the vehicles' emissions levels, On Board Diagnostic

("OBD") system requirements, and durability, as more fully described in Appendix B to the DOJ Consent Decree. The expected timeline for Volkswagen to submit proposed Emissions Modifications and for the EPA and CARB to approve or conclusively reject those Emissions Modifications is set forth in the DOJ Consent Decree. It is possible that EPA and CARB may approve Emissions Modifications for some Eligible Vehicles, but not for others. If the EPA and CARB reject a proposed Emissions Modification for a particular type of Eligible Vehicle, the Approved Emissions Modification Option will not be available to Eligible Owners and Eligible Lessees of that type of Eligible Vehicle. If no Approved Emissions Modification becomes available, Eligible Owners and Eligible Lessees who own or lease an Eligible Vehicle at that time will be informed that they remain eligible to participate in a Buyback or Lease Termination, or to opt out of the Class Action Settlement during the period from May 1, 2018, to June 1, 2018.

4.3.2. **Approved Emissions Modification Disclosure.** As set forth more fully in Appendix B to the DOJ Consent Decree, upon approval of each proposed Emission Modification, Volkswagen shall provide Eligible Owners, Eligible Lessees, and, as applicable, prospective purchasers, with a clear and accurate written disclosure as approved in the sole discretion of EPA and CARB (the "Approved Emissions Modification Disclosure") regarding the impacts of any Approved Emissions Modification on an Eligible Vehicle. The Approved Emissions Modification Disclosure shall also be made available online by Volkswagen using the Settlement Website, which will, among other things, display the Approved Emissions Modification Disclosure applicable to a specific vehicle when a user inputs the Vehicle Identification Number ("VIN"). This online access shall continue for a minimum of ten (10) years after the DOJ

Consent Decree is entered.  As described more fully in Appendix B to the DOJ Consent Decree, the Approved Emissions Modification Disclosure will describe in plain language: (1) the Approved Emissions Modification generally; (2) all software changes; (3) all hardware changes; (4) for Generation 3, a clear explanation of each subsequent service action required by the Approved Emissions Modification; (5) any and all reasonably predictable changes resulting from the Approved Emissions Modification, including but not limited to changes to reliability, durability, fuel economy, noise vibration, vehicle performance, drivability and any other vehicle attributes that may reasonably be important to vehicle owners; (6) a basic summary of how Eligible Owners and Eligible Lessees can obtain the Approved Emissions Modification; (7) system limitations that make identification and repair of any components difficult or even impossible, compromise warranty coverage, or may reduce the effectiveness of inspection and maintenance program vehicle inspections; and (8) any other disclosures required under the terms of the DOJ Consent Decree.  This Approved Emissions Modification Disclosure, and a description of the Approved Emissions Extended Warranty, will be part of the VW Class Update that is defined in Section 2.69.  Class Counsel will have an opportunity to comment on the disclosures made by Volkswagen on the Settlement Website on a reasonable schedule.

4.3.3. **Restitution Payment.**  If an Eligible Owner or Eligible Lessee remains in the Class and accepts an Approved Emissions Modification, Volkswagen shall, in addition to performing the Approved Emissions Modification, provide a Restitution Payment to the Eligible Owner or Eligible Lessee in accordance with the terms of Exhibit 1.  Such Restitution Payment will be the same as the Restitution Payment component offered to that Eligible

1    Owner or Eligible Lessee if he, she, or it selects the Buyback or Lease

2    Termination Option, as applicable, described in Sections 4.2.2 and 4.2.4.

3    4.3.4.    **Two-Step Approved Emissions Modifications for Generation 3**

4    **Vehicles.**  As described more fully in Appendix B to the DOJ Consent

5    Decree, any Emissions Modification for Eligible Vehicles with

6    Generation 3 engines shall be proposed and, if approved by the EPA and

7    CARB, made available in two stages.  Under this Class Action

8    Agreement, Eligible Owners and Eligible Lessees of Generation 3

9    Eligible Vehicles who elect an Approved Emissions Modification will be

10   offered two-thirds (2/3) of their Restitution Payment upon submitting

11   their vehicles for the first stage of the Approved Emissions Modification

12   and the remaining one-third (1/3) of their Restitution Payment, as well as

13   a free oil change with respective engine oil filter, to the Eligible Owner or

14   Eligible Lessee, upon submitting their vehicles for the second stage of the

15   Approved Emissions Modification.

16   4.3.5.    **Approved Emissions Modification Extended Warranty.**  In addition to

17   the Restitution Payment received in connection with the Approved

18   Emissions Modification, each Eligible Owner or Eligible Lessee who

19   receives the Approved Emissions Modification shall also receive an

20   Approved Emissions Modification Extended Warranty, as set forth more

21   fully in Appendix B to the DOJ Consent Decree.  The Approved

22   Emissions Modification Extended Warranty shall cover all components

23   which are replaced as part of the Approved Emissions Modification, any

24   component which, as determined by EPA and CARB, can reasonably be

25   impacted by effects of the Approved Emissions Modification, as well as

26   the engine sub-assembly that consists of the assembled block, crankshaft,

27   cylinder head, camshaft, and valve train.  The Approved Emissions

28   Modification Extended Warranty shall cover all parts and labor related to

1              the covered components, as well as the cost or provision of a loaner

2              vehicle for warranty service lasting longer than 3 hours.  Volkswagen will

3              not impose on Class Members any fees or charges, and must pay any fees

4              or charges imposed by its dealers related to the Approved Emissions

5              Modification Extended Warranty.  Volkswagen shall provide a free

6              loaner vehicle for the owner of any Eligible Vehicle undergoing an

7              Approved Emissions Modification that is scheduled to, or does, last

8              longer than three hours to complete.

9      4.3.6.    **Warranty Remedies.**  As set forth more fully in Appendix A to the DOJ

10            Consent Decree, in addition to any protections provided by law,

11            Volkswagen must reoffer and provide a Buyback or Lease Termination to

12            any Eligible Owner or Eligible Lessee of a vehicle modified in

13            accordance with an Approved Emissions Modification (a "Modified

14            Vehicle"), in the event that, during the 18 months or 18,000 miles

15            following the completion of the Approved Emissions Modification (the

16            "Reoffer Period"), Volkswagen fails to repair or remedy a confirmed

17            mechanical failure or malfunction covered by the Approved Emissions

18            Modification Extended Warranty and associated with the Approved

19            Emissions Modification (a "Warrantable Failure") after the Eligible

20            Owner or Eligible Lessee physically presents the Modified Vehicle to a

21            dealer for repair of the Warrantable Failure; and (1) the Warrantable

22            Failure is unable to be remedied after making four separate service visits

23            for the same Warrantable Failure during the Reoffer Period; or (2) the

24            Modified Vehicle with the Warrantable Failure is out of service due to the

25            Warrantable Failure for a cumulative total of 30 Days during the Reoffer

26            Period.  For avoidance of doubt, a Modified Vehicle shall not be deemed

27            "out of service" when (after diagnosing the Warrantable Failure) the

28            dealer returns or tenders the Modified Vehicle to the customer while the

dealer awaits necessary parts for the Warrantable Failure, and the
Modified Vehicle remains operable.  In such a case, the Eligible Owner
or Eligible Lessee shall receive the payments that he or she would have
received under a Buyback or Lease Termination at the time the Eligible
Owner or Eligible Lessee first requested the Approved Emissions
Modification less any payment amounts already received.  No Eligible
Owner or Eligible Lessee shall receive double-recovery of any portion of
any payment.

4.3.7.  **Preservation of Remedies.**  The Approved Emissions Modification
Extended Warranty shall be subject to any remedies provided by state or
federal laws, such as the Magnuson-Moss Warranty Act, that provide
consumers with protections, including, without limitation, "Lemon Law"
protections, with respect to warranties.

4.3.8.  **No Defense.**  Neither this Class Action Agreement nor the Final
Approval Order is a defense to liability arising out of any Approved
Emissions Modification.  Nothing herein prohibits Volkswagen from
relying on this Class Action Agreement in any action alleging
noncompliance with the Class Action Agreement.

4.3.9.  **Disclosure to Subsequent Purchasers.**  For each Eligible Vehicle that
receives an Approved Emissions Modification, Volkswagen shall label
the vehicle as set forth in the DOJ Consent Decree and provide a
mechanism for potential purchasers to determine if the vehicle has
received an Approved Emissions Modification.

4.4.  **Other Provisions**

4.4.1.  **Allocation of Funding Pool.**  The Parties have negotiated among
themselves, under the supervision of the Settlement Master, a plan of
allocation of the Funding Pool among eligible Class Members so that

those parameters can be described as part of notice to the Class.  The plan of allocation is set forth in Exhibit 1.

4.4.2.  **No Prohibition on Other Incentives.**  Nothing in this Class Action Agreement is intended to prohibit Volkswagen from offering any consumer any further incentives or trade-in options in addition to those provided herein; however, Volkswagen may not offer consumers other incentives or trade-in options in lieu of the options contained herein, in whole or in part, or any incentive not to participate in the Class Action Settlement Program.  Likewise, Volkswagen shall request that Volkswagen Dealers not offer any incentive not to participate in the Settlement Program.

4.4.3.  **Disposition of Returned Vehicles.**  As set forth more fully in Appendix A to the DOJ Consent Decree, Eligible Vehicles bought back by or returned to Volkswagen must be rendered inoperable by removing the vehicles' Engine Control Unit and may be, to the extent possible, recycled to the extent permitted by law.  No such Eligible Vehicle that is rendered inoperable may subsequently be rendered operable until it has first received an Approved Emissions Modification.  After modifying a bought-back or returned Eligible Vehicle in accordance with an Approved Emissions Modification, Volkswagen may then elect to (i) resell the bought-back or returned Eligible Vehicles in the United States, if properly labeled to disclose the Approved Emissions Modification, or (ii) export the bought-back or returned Eligible Vehicles.

4.4.4.  **Telephone Call Center.**  Volkswagen shall establish a telephone call center to address Class Member inquiries.  The Parties will agree as to what information will be provided by the Telephone Call Center to inquiring Class Members.

4.4.5. **No Attorneys' Fees or Costs.** To the extent Volkswagen elects or is ordered to pay private attorneys' fees or costs, Volkswagen will not receive credit for such payments against obligations to Class Members under this Class Action Agreement and the Final Approval Order. Volkswagen reserves the right to challenge attorneys' fees or costs to the extent the request for an award of fees and costs exceeds the fees and costs that Volkswagen has agreed to pay.

4.4.6. **Joint and Several Responsibility.** The Volkswagen Entities' obligations to comply with the requirements of the Class Action Agreement are joint and several. In the event of the insolvency of any Volkswagen Entity or the failure by any Volkswagen Entity to implement any requirement of the Class Action Agreement, the remaining Volkswagen Entities shall complete all such requirements. Any legal successor or assign of any Volkswagen Entity shall remain jointly and severally liable for the payment and other performance obligations hereunder. The Volkswagen Entities shall include an agreement to so remain liable in the terms of any sale, acquisition, merger or other transaction changing the ownership or control of any of the Volkswagen Entities, and no change in the ownership or control of any Volkswagen Entity shall affect the obligations hereunder of any Volkswagen Entity.

4.4.7. **Tax Implications.** Nothing in the Class Action Agreement prevents tax-advantaged sales tax treatment of the Buyback, which may be available under the laws of some states. Class Members are encouraged to consult their personal tax advisor for further assistance regarding any tax ramifications of this Class Action Settlement.

4.4.8. **Deceased, Dissolved, or Bankrupt Claim Members.** Nothing in the Class Action Agreement shall prevent Class benefits from being provided, upon appropriate proof, to, or for the benefit of, an otherwise

- 25 -

eligible Class Member, or that Class Member's estate or legal
representative, notwithstanding that Class Member's death, dissolution,
or bankruptcy (whether discharged or ongoing), in accordance with
applicable law.

**5.      CLASS CLAIMS PROCESS AND ADMINISTRATION**

5.1.    **Claims Program.**  The Claims Program involves five steps.  At **Step 1**, based on information they provide to Volkswagen online or by telephone, Class Members will obtain information about the options available to them.  At **Step 2**, once a Class Member is ready to proceed with the Claims Process, the Class Member will submit a Claim Form online, by mail, or by fax, that contains certain information about his or her Eligible Vehicle along with required documentation.  At **Step 3**, the Class Member's eligibility or ineligibility to participate in the Class Action Settlement will be determined, and a formal offer will be made if the Class Member is deemed an eligible "Claimant."  At **Step 4**, Claimants will confirm their selection of an offered remedy, accept their formal offer, and schedule an appointment at their preferred Volkswagen (or Audi) Dealer (if necessary).  At **Step 5**, Claimants will obtain their chosen remedy.  The process for submitting a Claim is designed to be as simple and convenient to Claimants as possible, consistent with the integrity of the Claims Program.

5.2.    **Claims Supervisor.**  Based on information and documents collected from Class Members by Volkswagen, the Claims Supervisor will oversee the implementation and administration of the Claims Process, including validation of Claim eligibility and approval of compensation offers and payments to Class Members.  The Claims Supervisor's duties include, but are not limited to (1) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and/or objections to the Settlement; and (2) forwarding written inquiries to Class Counsel or its designee for a response, if warranted.

5.3.    **Claims Review Committee.**  The Court shall appoint a Claims Review Committee ("CRC") to review contested claims deemed ineligible and appealed by the Claimant. The CRC will include one representative from Volkswagen and one representative from Class Counsel, as well as a Court-appointed "Neutral," who would be called upon only to resolve any

disagreements between the CRC's other members, should they arise. It is anticipated that the

Parties will be able to resolve most issues, but the availability of a neutral third party appointed

by the Court ensures that disputes can be resolved without Court intervention. The Class Counsel

representative on the CRC will have responsibility for handling CRC communication with

Claimants and Claimants' counsel. Determinations by the CRC as to ineligible Claims will

constitute final determinations.

5.4.     **Reporting.** The Claims Supervisor will prepare periodic reports on the progress

and status of the Claims Program. The Claims Supervisor shall provide its first report to the

Court within one month from the Effective Date and every three months thereafter. The Claims

Supervisor shall provide reports to the Parties on a monthly basis. These reports will include

information sufficient to allow the Court and the Parties to assess the Claims Program's progress.

5.5.     **The Court's Ongoing and Exclusive Jurisdiction.** The Court retains the

ongoing and exclusive jurisdiction and independent case management authority, as MDL

Transferee Judge and under Federal Rule of Civil Procedure 23, regarding the general operation

of the Claims Program and those appointed to implement and oversee it.

## 6.     REQUESTS FOR EXCLUSION

6.1.     **Manner of Opting Out.** The Class Notice will provide instructions regarding the

procedures that must be followed to opt out of the Class pursuant to Fed. R. Civ. P.

23(c)(2)(B)(v). The Parties agree that, to opt out validly from the Class, a Class Member must

personally sign and submit a written request to opt out stating "I wish to exclude myself from the

Class in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability*

*Litigation*, No. 15-md-2672," (or substantially similar clear and unambiguous language) to the

Claims Supervisor on or before the Opt-Out Deadline at the following address: Opt Out VW

Settlement, P.O. Box 57424, Washington, DC 20037. That written request also will contain the

Class Member's printed name, address, telephone number, and VIN of the Eligible Vehicle

forming the basis of the Class Member's inclusion in the Class, a statement as to whether the

Class Member is an Eligible Owner, Eligible Lessee, or Eligible Seller, and the dates of the Class

Member's ownership or lease of an Eligible Vehicle. For any Class Member who no longer owns

or leases an Eligible Vehicle, evidence that the vehicle was sold or that the lease expired or was

terminated also must be provided.  The Claims Supervisor will provide copies of all opt-out

requests to Lead Class Counsel and Counsel for Volkswagen within seven (7) days of the receipt

of each such request.

6.2.    **Consequences of Failure To Opt Out in a Timely and Proper Manner.**  All

Class Members who do not timely and properly opt out of the Class will in all respects be bound

by all terms of this Class Action Agreement and the Final Approval Order upon the Effective

Date.

6.3.    **Opting Out and Objecting Are Mutually Exclusive Options.**  Any Class

Member who elects to opt out pursuant to this Section may not also object to the Settlement,

pursuant to Section 7 herein.  Any Class Member who elects to object pursuant to Section 7

herein may also not opt out pursuant to this Section.

**7.    OBJECTIONS TO THE SETTLEMENT**

7.1.    **Manner of Objecting.**  The Class Notice Program will provide instructions

regarding the procedures that must be followed to object to the Settlement pursuant to Federal

Rule of Civil Procedure 23(e)(5).  Provided that a Class Member has not submitted a written

request to opt out, as set forth in Section 6, the Class Member may present written objections, if

any, explaining why he or she believes the Class Action Settlement should not be approved by the

Court as fair, reasonable, and adequate.  No later than such date as is ordered by the Court, a

Class Member who wishes to object to any aspect of the Class Action Settlement must file with

the Court, or as the Court otherwise may direct, a written statement of the objection(s).  The

written statement of objection(s) must include a detailed statement of the Class Member's

objection(s), as well as the specific reasons, if any, for each such objection, including any

evidence and legal authority the Class Member wishes to bring to the Court's attention.  That

written statement also will contain the Class Member's printed name, address, telephone number,

and VIN of the Eligible Vehicle forming the basis of the Class Member's inclusion in the Class,

the dates of the Class Member's ownership or lease of the Eligible Vehicle, a statement as to

whether the Class Member is an Eligible Owner, Eligible Lessee, or Eligible Seller, a statement

that the Class Member has reviewed the Class definition and has not opted out of the Class, and any other supporting papers, materials, or briefs the Class Member wishes the Court to consider when reviewing the objection.

7.2. **Objecting Through Counsel.** A Class Member may object on his or her own behalf or through a lawyer hired at that Class Member's own expense, provided the Class Member has not submitted a written request to opt out, as set forth in Section 7. The objection must state whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection. Lawyers asserting objections on behalf of Class Members must: (a) file a notice of appearance with the Court by the date set forth in the Preliminary Approval and Class Certification Order, or as the Court otherwise may direct; (b) file a sworn declaration attesting to his or her representation of each Class Member on whose behalf the objection is being filed or file (in camera) a copy of the contract between that lawyer and each such Class Member; and (c) comply with the procedures described in this Section.

7.3. **Intent To Appear at the Fairness Hearing.** A Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Preliminary Approval Order, a written notice of his or her intent to appear at the Fairness Hearing, in accordance with the requirements set forth in the Preliminary Approval Order, or by such time and in such manner as the Court may otherwise direct.

7.4. **Consequences of Failure To Object in a Timely and Proper Manner.** Unless the Court directs otherwise, any Class Member who fails to comply with the provisions of this Section, will waive and forfeit any and all rights he, she, or it may have to object to the Class Action Settlement and/or to appear and be heard on said objection at the Fairness Hearing. Failure to object waives a Class Member's right to appeal.

**8. DUTIES OF THE NOTICE ADMINISTRATOR**

8.1. The Notice Administrator shall be responsible for, without limitation: (a) printing, mailing by First-Class U.S. Mail, postage paid, or arranging for the mailing of the Long Form

- 29 -

Notice (attached as Exhibit 3) and personalized cover letters; (b) updating Class Member address information prior to mailing using the National Change of Address (NCOA) system; (c) handling returned notice-related mail not delivered to Class Members; (d) attempting to obtain updated address information for any Long Form Notice packages returned without a forwarding address; (e) responding to requests for Long Form Notice packages; (f) establishing a post-office box for the receipt of any correspondence; (g) responding to requests from Class Counsel and/or Volkswagen's Negotiating Counsel; (h) assisting in the creation of Notice-related content for the Settlement Websites to which Class Members may refer for information about the Action and the Settlement; and (i) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement.

8.2. The Notice Administrator shall be responsible for arranging for the publication of the Short Form Notice (attached as Exhibit 2), establishing Internet banner notifications, and for consulting on other aspects of the Class Notice Program including, but not limited to, media outreach, including advertisements, in national newspapers, trade publications, and the Internet. The print advertisements will be substantially similar to the Short Form Notice. The Claims Supervisor and/or the Notice Administrator shall coordinate to minimize costs in effectuating the terms of this Class Action Agreement. The Notice Administrator shall submit a projected budget to Class Counsel and Volkswagen on an annual basis and shall not make expenditures that exceed that projected budget by more than eight (8) percent without the prior approval of Class Counsel and Volkswagen.

8.3. All reasonable and necessary costs of the Class Notice Program, including the VW Class Update, and the fees and costs of the Notice Administrator, shall be borne exclusively by Volkswagen.

8.4. Within two (2) days of the issuance of the Preliminary Approval Order and the approval of the Class Notice Program by the Court, Volkswagen shall transfer or pay to the Notice Administrator an amount sufficient to cover the initial costs of the Class Notice Program.

8.5. The Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

8.6.    The Notice Administrator shall send to each appropriate state and federal official the materials specified in 28 U.S.C. § 1715 and otherwise comply with its terms.  The identities of such officials and the content of the materials shall be mutually agreed to by the Parties.

8.7.    Not later than ten (10) days before the date of the Fairness Hearing, the Notice Administrator shall file with the Court a list of those persons who have opted out or excluded themselves from the Settlement.  The Notice Administrator shall file with the Court the details outlining the scope, method and results of the Class Notice Program.

8.8.    The Notice Administrator and the Parties shall promptly after receipt provide copies of any requests for exclusion, objections and/or related correspondence to each other.

**9.     RELEASE AND WAIVER**

9.1.    The Parties agree to the following release and waiver (the "Release"), which shall take effect upon entry of the Final Approval Order.  The terms of the Release are a material term of the Class Action Agreement and will be reflected in the Final Approval Order.

9.2.    **Released Parties.**  Released Parties means any person who, or entity that, is or could be responsible or liable in any way whatsoever, whether directly or indirectly, for the 2.0-liter TDI Matter.  The Released Parties include, without limitation, (1) Volkswagen AG, Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc. or Audi of America, Inc.), Volkswagen Group of America Chattanooga Operations, LLC, Audi AG, Audi of America, LLC, VW Credit, Inc., VW Credit Leasing, Ltd., VCI Loan Services, LLC, and any former, present, and future owners, shareholders, directors, officers, employees, attorneys, affiliates, parent companies, subsidiaries, predecessors, and successors of any of the foregoing (the "VW Released Entities"); (2) any and all contractors, subcontractors, and suppliers of the VW Released Entities; (3) any and all persons and entities indemnified by any VW Released Entity with respect to the 2.0-liter TDI Matter; (4) any and all other persons and entities involved in the design, research, development, manufacture, assembly, testing, sale, leasing, repair, warranting, marketing, advertising, public relations, promotion, or distribution of any Eligible Vehicle, even if such persons are not specifically named in this paragraph, including without limitation all Volkswagen Dealers, as well as non-authorized dealers and sellers; (5) Claims Supervisor;

(6) Notice Administrator; (7) lenders, creditors, financial institutions, or any other parties that financed any purchase or lease of an Eligible Vehicle; and (8) for each of the foregoing, their respective former, present, and future affiliates, parent companies, subsidiaries, predecessors, successors, shareholders, indemnitors, subrogees, spouses, joint ventures, general or limited partners, attorneys, assigns, principals, officers, directors, employees, members, agents, representatives, trustees, insurers, reinsurers, heirs, beneficiaries, wards, estates, executors, administrators, receivers, conservators, personal representatives, divisions, dealers, and suppliers. Notwithstanding the foregoing, this Release does not release any claims against Robert Bosch GmbH and Robert Bosch, LLC or any of its former, present, and future owners, shareholders, directors, officers, employees, attorneys, affiliates, parent companies, subsidiaries, predecessors, or successors.

      9.3.    **Class Release.**  In consideration for the Settlement, Class Members, on behalf of themselves and their agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, shareholders, owners associations, and any other legal or natural persons who may claim by, though, or under them (the "Releasing Parties"), fully, finally, irrevocably, and forever release, waive, discharge, relinquish, settle, and acquit any and all claims, demands, actions, or causes of action, whether known or unknown, that they may have, purport to have, or may have hereafter against any Released Party, as defined above, arising out of or in any way related to the 2.0-liter TDI Matter.  This Release applies to any and all claims, demands, actions, or causes of action of any kind or nature whatsoever, whether in law or in equity, known or unknown, direct, indirect or consequential, liquidated or unliquidated, past, present or future, foreseen or unforeseen, developed or undeveloped, contingent or non-contingent, suspected or unsuspected, whether or not concealed or hidden, arising from or in any way related to the 2.0-liter TDI Matter, including without limitation (1) any claims that were or could have been asserted in the Action; and (2) any claims for fines, penalties, criminal assessments, economic damages, punitive damages, exemplary damages, liens, injunctive relief, attorneys', expert, consultant, or other litigation fees or costs other than fees and costs awarded by the Court in connection with this Settlement, or any other liabilities, that were or could have been

asserted in any civil, criminal, administrative, or other proceeding, including arbitration (the
"Released Claims"). This Release applies without limitation to any and all such claims, demands,
actions, or causes of action regardless of the legal or equitable theory or nature under which they
are based or advanced including without limitation legal and/or equitable theories under any
federal, state, provincial, local, tribal, administrative, or international law, or statute, ordinance,
code, regulation, contract, common law, equity, or any other source, and whether based in strict
liability, negligence, gross negligence, punitive damages, nuisance, trespass, breach of warranty,
misrepresentation, breach of contract, fraud, or any other legal or equitable theory, whether
existing now or arising in the future, that arise from or in any way relate to the 2.0-liter TDI
Matter. Notwithstanding the foregoing, this Agreement does not release any claims for wrongful
death or personal injury. For the avoidance of doubt, claims relating to 3.0-liter TDI vehicles are
not subject to any release in this Class Action Agreement.

9.4. **Possible Future Claims.** For the avoidance of doubt, Class Members expressly
understand and acknowledge that they may hereafter discover claims presently unknown or
unsuspected, or facts in addition to or different from those that they now know or believe to be
true, related to the 2.0-liter TDI Matter, the Action and/or the Release herein. Nevertheless, it is
the intention of Class Counsel and the Class Representatives in executing this Class Action
Agreement to fully, finally, irrevocably, and forever release, waive, discharge, relinquish, settle,
and acquit all such matters, and all claims relating thereto which exist, hereafter may exist, or
might have existed (whether or not previously or currently asserted in any action or proceeding)
with respect to the 2.0-liter TDI Matter.

9.5. **Release of "Holder Rule" Claims.** In exchange for the Class Action Settlement
compensation and remedies described in Section 4 and Exhibit 1, Class Members shall execute a
release releasing their potential claims under the Trade Regulation Rule Concerning the
Preservation of Consumers' Claims and Defenses 16 C.F.R. §433.2 (the "Holder Rule"), relating
to the 2.0-liter TDI Matter.

9.6. **Waiver of California Civil Code Section 1542 and Analogous Provisions.**
Class Representatives expressly understand and acknowledge, and Class Members will be

deemed to understand and acknowledge Section 1542 of the California Civil Code, which

provides: "**A general release does not extend to claims which the creditor does not know or**

**suspect to exist in his or her favor at the time of executing the release, which if known by**

**him or her must have materially affected his or her settlement with the debtor.**" Each Class

Representative expressly acknowledges that he, she, or it has been advised by Class Counsel of

the contents and effect of Section 1542 and that he, she, or it has considered the possibility that

the number or magnitude of all claims may not currently be known. To ensure that this Release is

interpreted fully in accordance with its terms, Class Members expressly waive and relinquish any

and all rights and benefits that they may have under Section 1542 to the extent that such section

may be applicable to the Release. Class Members likewise expressly waive and relinquish any

rights or benefits of any law of any state or territory of the United States, federal law or principle

of common law, or of international or foreign law, which is similar, comparable, analogous, or

equivalent to Section 1542 of the California Code to the extent that such laws or principles may

be applicable to the Release.

9.7.    **Individual Release.** Class Members who receive a Buyback, Lease Termination

and/or Restitution Payment shall be required to execute an Individual Release, in the form

attached as Exhibit 5, as a precondition to receiving such relief. Consistent with the Release

provided in this Agreement, the Individual Release will provide that the Class Member releases

all of the Released Parties from any and all present and future claims (as described in Sections 9.3

and 9.4) arising out of or related to the 2.0-liter TDI Matter. The Individual Release shall remain

effective even if the Final Approval Order is reversed and/or vacated on appeal, or if this Class

Action Agreement is abrogated or otherwise voided in whole or in part.

9.8.    **Actions or Proceedings Involving Released Claims.** Class Members who do not

opt out expressly agree that this Release, and the Final Approval Order, is, will be, and may be

raised as a complete defense to, and will preclude, any action or proceeding specified in, or

involving claims encompassed by, this Release. Class Members who do not opt out shall not now

or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution,

commencement, filing or prosecution of any suit, action, and/or other proceeding, against the

Released Parties with respect to the claims, causes of action and/or any other matters subject to this Release. To the extent that they have initiated, or caused to be initiated, any suit, action, or proceeding not already encompassed by the Action, Class Members who do not opt out shall cause such suit, action, or proceeding to be dismissed with prejudice. If a Class Member who does not opt out commences, files, initiates, or institutes any new legal action or other proceeding for any Released Claim against any Released Party in any federal or state court, arbitral tribunal, or administrative or other forum, (1) such legal action or other proceeding shall be dismissed with prejudice and at that Class Member's cost; and (2) the respective Released Party shall be entitled to recover any and all reasonable related costs and expenses from that Class Member arising as a result of that Class Member's breach of his, her, or its obligations under this Release.

9.9. **Ownership of Released Claims.** Class Representatives shall represent and warrant that they are the sole and exclusive owners of any and all claims that they personally are releasing under this Class Action Agreement. Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the 2.0-liter TDI Matter, including without limitation, any claim for benefits, proceeds or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which Class Representatives may be entitled as a result of the 2.0-liter TDI Matter. Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Class Action Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Actions, including without limitation, any claim for benefits, proceeds or value under the Actions, and that such Class Members are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which those Class Members may be entitled as a result of the 2.0-liter TDI Matter.

9.10. **Total Satisfaction of Released Claims.** Any benefits pursuant to the Class

Action Agreement are in full, complete, and total satisfaction of all of the Released Claims

against the Released Parties, that the Benefits are sufficient and adequate consideration for each

and every term of this Release, and that this Release shall be irrevocably binding upon Class

Representatives and Class Members who do not opt out of the Class.

9.11. **Release Not Conditioned on Claim or Payment.** The Release shall be effective

with respect to all Releasing Parties, including all Class Members who do not opt out, regardless

of whether those Class Members ultimately file a Claim or receive compensation under this Class

Action Agreement.

9.12. **Basis for Entering Release.** Class Counsel acknowledge that they have

conducted sufficient independent investigation and discovery to enter into this Class Action

Agreement and that they execute this Class Action Agreement freely, voluntarily, and without

being pressured or influenced by, or relying on any statements, representations, promises, or

inducements made by the Released Parties or any person or entity representing the Released

Parties, other than as set forth in this Class Action Agreement. Class Representatives

acknowledge, agree, and specifically represent and warrant that they have discussed with Class

Counsel the terms of this Class Action Agreement and have received legal advice with respect to

the advisability of entering into this Class Action Agreement and the Release, and the legal effect

of this Class Action Agreement and the Release. The representations and warranties made

throughout the Class Action Agreement shall survive the execution of the Class Action

Agreement and shall be binding upon the respective heirs, representatives, successors and assigns

of the Parties.

9.13. **Material Term.** Class Representatives and Class Counsel hereby agree and

acknowledge that this Section 9 was separately bargained for and constitutes a key, material term

of the Class Action Agreement that shall be reflected in the Final Approval Order.

9.14. **Reservation of Claims.** This Class Action Agreement shall resolve the claims of

Class Members who do not opt out only as they relate to the 2.0-liter TDI Matter. The Parties

reserve all rights to litigate liability and equitable relief of any sort for any subset of vehicles,

purchasers, or lessees not expressly covered by this Class Action Agreement. For avoidance of

1  doubt, this carve-out includes, but is not limited to, claims related to 3.0-liter TDI vehicles.

2        **9.15.** **Released Parties' Releases of Class Representatives, the Class, and Class**

3  **Counsel.** Upon the Effective Date, Released Parties absolutely and unconditionally release and

4  forever discharge the Class Representatives, Class Members, and Class Counsel from any and all

5  claims relating to the institution or prosecution of the Action.

6        **9.16.** **Jurisdiction.** The Court shall retain exclusive and continuing jurisdiction over all

7  Parties, the Action, and this Class Action Agreement to resolve any dispute that may arise

8  regarding this Class Action Agreement or in relation to this Action, including any dispute

9  regarding validity, performance, interpretation, administration, enforcement, enforceability, or

10  termination of the Class Action Agreement and no Party shall oppose the reopening and

11  reinstatement of the Action on the MDL Court's active docket for the purposes of effecting this

12  Section.

13  **10.** **ESCROW ACCOUNT**

14        **10.1.** Within ten (10) business days after the Court enters the Final Approval Order,

15  Volkswagen shall fund the Escrow Account with the "Funding Amount," which funds shall be

16  used, as necessary, to compensate Class Members who submit valid Claims pursuant to this Class

17  Action Agreement. The initial Funding Amount shall be $1,500,000,000. If and when the

18  funding level of the Escrow Account reaches the "Minimum Balance," which shall initially be set

19  at $1,250,000,000, the Escrow Agent shall alert Volkswagen, and Volkswagen shall, within seven

20  (7) business days, deposit such funds in the Escrow Account as are necessary to bring the balance

21  of the Escrow Account back to the Funding Amount.

22        **10.2.** Every six (6) months after the Escrow Account is first funded, the Funding

23  Amount shall be adjusted to the lower of (i) the initial amount of $1,500,000,000 or (ii) twenty-

24  five (25) percent of the amount of the total Funding Pool that has not yet been spent, as verified

25  by the Claims Supervisor. In the event that the Funding Amount is adjusted, the Minimum

26  Balance shall be adjusted proportionately. For example, if the Funding Amount is adjusted to

27  $900,000,000, the Minimum Balance shall be adjusted to $750,000,000.

28        **10.3.** Within thirty (30) days of the conclusion of the Claim Period, any funds in the

1    Escrow Account, including all interest accrued, shall revert to Volkswagen.

2        10.4.   In the event that the Class Action Settlement is terminated or invalidated for any

3    reason prior to the conclusion of the Claim Period, any funds in the Escrow Account, including

4    all interest accrued, shall revert to Volkswagen.

5    **11.    ATTORNEYS' FEES AND EXPENSES**

6        11.1.   Volkswagen agrees to pay reasonable attorneys' fees and costs for work performed

7    by Class Counsel in connection with the Action as well as the work performed by other attorneys

8    designated by Class Counsel to perform work in connection with the Action in an amount to be

9    negotiated by the Parties and that must be approved by the Court.  Volkswagen and Class Counsel

10   represent that they have not discussed the amount of fees and costs to be paid prior to agreement

11   on the terms of this Class Action Agreement.  Class Counsel and counsel for Volkswagen will

12   attempt to negotiate the amount of attorneys' fees and costs to be paid after the execution of this

13   Class Action Agreement and any settlement agreement related to claims involving TDI vehicles

14   with 3.0-liter engines.  If a settlement agreement related to 3.0-liter TDI vehicles is not reached

15   by August 12, 2016, Class Counsel and counsel for Volkswagen will attempt to negotiate the

16   amount of attorneys' fees and costs to be paid in connection with claims involving Eligible

17   Vehicles (*i.e.*, TDI vehicles with 2.0-liter engines).  If the Parties reach an agreement about the

18   amount of attorneys' fees and costs, Class Counsel will submit the negotiated amount to the Court

19   for approval.  If the Parties do not reach an agreement as to the amount of attorneys' fees and

20   costs, the parties will litigate the fee issues, and each party will present its respective position to

21   the Court for determination.  The litigation of the fee issues will be subject to the Parties'

22   agreement that:  (1) the attorneys' fees and costs will be paid by Volkswagen in addition to the

23   compensation provided to Class Members under this Class Action Agreement; (2) each party will

24   be free to argue for what it believes is a reasonable fee; and (3) Volkswagen and Class Counsel

25   will request that the Court issue an Order setting forth the amount to be paid in attorneys' fees

26   and costs to be paid by Volkswagen in this action, and providing that Class Counsel will not be

27   permitted to seek additional fees and costs after the Court makes its award.  The Parties shall have

28   the right to appeal the Court's determination as to the amount of attorneys' fees and costs.

Volkswagen reserves all rights to object to an award of attorney's fees and/or costs beyond what it believes to be reasonable.

**12.     PROPOSED SCHEDULE FOR APPROVAL OF SETTLEMENT**

12.1.     **Preliminary Approval Order.**  As set forth in Section 3.1, on or before June 28, 2016, the Parties shall file with the Court a Motion for Preliminary Approval of the Class Action Agreement and Approval of Class Notice.

12.2.     **Final Settlement Approval Order and Judgment.**  On or before August 26, 2016, or any subsequently mutually agreed upon date, Class Counsel shall file with the Court a motion seeking a Final Judgment Approving and Providing for the Enforcement of the Class Action Settlement.

12.3.     **Proposed Schedule.**  A comprehensive potential schedule for the approval of this Settlement is set forth below, subject, of course, to the views of the Court.  The Parties will use their best efforts to advance the Settlement along the lines outlined in the proposed schedule set forth below, recognizing it is subject to change, as required by Court order and/or agreed to by the Parties.

| Date | Event |
|---|---|
| June 28, 2016 | Class Representatives file Motion for Preliminary Approval of Settlement |
| June 30, 2016 | Status Conference with the Court |
| July 5, 2016 | Volkswagen provides Class Action Fairness Act Notice to State Attorneys General |
| July 26, 2016 | Preliminary Approval Hearing [Remainder of schedule assumes entry of Preliminary Approval Order on this date] |
| July 27, 2016 | Class Notice Program begins |
| August 19, 2016 | Class Notice Program ends |
| August 26, 2016 | Motion for Final Approval filed |
| September 16, 2016 | Objection and Opt-Out Deadline |
| September 16, 2016 | End of Eligible Seller Identification Period |

| September 29, 2016 | Deadline for State Attorneys General to file Comments/Objections to this Class Action Agreement |
| September 30, 2016 | Reply Memorandum in Support of Final Approval filed |
| October 3, 2016 – October 7, 2016 | Final Approval Hearing. While the timing and outcome of every determination is at the Court's discretion, the Parties to this Class Action Agreement request and anticipate that the Court would enter the DOJ Consent Decree and FTC Consent Order at the same time as the Final Approval Order.<br><br>The Buyback and Lease Termination program under this Class Action Agreement will begin expeditiously upon Final Approval. To the extent available, the Approved Emissions Modification Option under this Class Action Agreement will begin at the same time. |

## 13. AGREEMENT TO COOPERATE TO EFFECTUATE SETTLEMENT

13.1. Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Class Action Agreement. The persons signing this Class Action Agreement on behalf of each Party warrants that he/she is authorized to sign this Class Action Agreement on behalf of that Party.

13.2. The Parties and their respective counsel will cooperate with each other, act in good faith, and use their best efforts to effect the implementation of the Class Action Agreement and advance the Settlement Claims Program. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Class Action Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Class Action Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

13.3. The Parties further agree to make all reasonable efforts to ensure the timely and expeditious administration and implementation of the Class Action Agreement and to minimize the costs and expenses incurred therein.

## 14. MODIFICATION OR TERMINATION OF THIS CLASS ACTION AGREEMENT

14.1. The terms and provisions of this Class Action Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Approval Order, the Parties may by written agreement effect

1  such amendments, modifications, or expansions of this Class Action Agreement and its

2  implementing documents (including all exhibits hereto) without further notice to the Class or

3  approval by the Court if such changes are consistent with the Court's Final Approval Order and

4  do not limit the rights of Class Members under this Class Action Agreement.

5      14.2.   Any unintended conflicts between the Class Action Agreement, the DOJ Consent

6  Decree, and/or the FTC Consent Order shall not be held against any of the Parties, but shall

7  instead be resolved by mutual agreement of the Parties, with the aid of the Settlement Master and,

8  if necessary, the Court.

9      14.3.   This Class Action Agreement shall terminate at the discretion of either

10  Volkswagen or the Class Representatives, through Class Counsel, if: (1) the Court, or any

11  appellate court(s), rejects, modifies, or denies approval of any portion of this Class Action

12  Agreement or the proposed Settlement that the terminating Party in its (or their) sole judgment

13  and discretion reasonably determine(s) is material, including, without limitation, the terms of

14  relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of

15  the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not

16  enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval

17  Order, or any of the Court's findings of fact or conclusions of law, that the terminating Party in its

18  (or their) sole judgment and discretion reasonably determine(s) is material. The terminating Party

19  must exercise the option to withdraw from and terminate this Class Action Agreement, as

20  provided in this Section 14, by a signed writing served on the other Parties no later than twenty

21  days after receiving notice of the event prompting the termination. The Parties will be returned to

22  their positions status quo ante.

23      14.4.   If an option to withdraw from and terminate this Class Action Agreement arises

24  under Section 14.3 above, neither Volkswagen nor Class Representatives are required for any

25  reason or under any circumstance to exercise that option and any exercise of that option shall be

26  in good faith.

27      14.5.   If, but only if, this Class Action Agreement is terminated pursuant to Section 14.3,

28  above, then:

14.5.1.  This Class Action Agreement shall be null and void and shall have no force or effect, and no Party to this Class Action Agreement shall be bound by any of its terms, except for the terms of Section 14.5 herein;

14.5.2.  The Parties will petition the Court to have any stay orders entered pursuant to this Class Action Agreement lifted;

14.5.3.  All of the provisions of this Class Action Agreement, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of Volkswagen, Class Representatives, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Class Action Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

14.5.4.  Released Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, the argument that the Action may not be litigated as a class action;

14.5.5.  Class Representatives and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of action or remedies that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, and treble or other damages;

14.5.6.  Volkswagen expressly and affirmatively reserves and does not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the Action, including without limitation, any argument or

1  position opposing class certification, liability, damages, or injunctive

2  relief;

3  14.5.7.  Neither this Class Action Agreement, the fact of its having been entered

4  into, nor the negotiations leading to it shall be admissible or entered into

5  evidence for any purpose whatsoever;

6  14.5.8.  Any settlement-related order(s) or judgment(s) entered in this Action after

7  the date of execution of this Class Action Agreement shall be deemed

8  vacated and shall be without any force or effect;

9  14.5.9.  Volkswagen shall bear all reasonable and necessary costs incurred by the

10  Claims Supervisor and Notice Administrator in connection with the

11  implementation of this Class Action Settlement up until its termination.

12  Neither the Class Representatives nor Class Counsel shall be responsible

13  for any such settlement-related costs; and

14  14.5.10. Within five (5) business days, any funds in the Escrow Account,

15  including any interest accrued, shall revert to Volkswagen.

16  14.6.  Notwithstanding the terms of Sections 14.5.1 through 14.5.10 above, if a Class

17  Member has (i) received compensation under the Class Action Agreement prior to its termination

18  or invalidation and (ii) executed an Individual Release, such a Class Member and Volkswagen

19  shall be bound by the terms of the Individual Release, which terms shall survive termination or

20  invalidation of the Class Action Agreement.

21  **15.  REPRESENTATIONS AND WARRANTIES**

22  15.1.  Class Counsel represents that: (1) they are authorized by the Class Representatives

23  to enter into this Class Action Agreement with respect to the claims asserted in the Action and

24  any other claims covered by the Release; and (2) they are seeking to protect the interests of the

25  Class.

26  15.2.  Class Counsel further represents that the Class Representatives: (1) have agreed to

27  serve as representatives of the Class proposed to be certified herein; (2) are willing, able, and

28  ready to perform all of the duties and obligations of representatives of the Class; (3) have read the

1   pleadings in the Action, including the Complaint, or have had the contents of such pleadings

2   described to them; (4) have consulted with Class Counsel about the obligations imposed on

3   representatives of the Class; (5) understand that they are entitled only to the rights and remedies

4   of Class Members under this Class Action Agreement and  not to any additional compensation by

5   virtue of their status as Class Representatives; and (6) shall remain and serve as representatives of

6   the Class until the terms of this Class Action Agreement are effectuated, this Class Action

7   Agreement is terminated in accordance with its terms, or the Court at any time determines that

8   said Class Representatives cannot represent the Class.

9         15.3.   Volkswagen represents and warrants that the individual(s) executing this Class

10  Action Agreement are authorized to enter into this Class Action Agreement on behalf of

11  Volkswagen.

12        15.4.   The Parties acknowledge and agree that no opinion concerning the tax

13  consequences of the proposed Settlement to Class Members is given or will be given by the

14  Parties, nor are any representations or warranties in this regard made by virtue of this Class

15  Action Agreement.  Each Class Member's tax obligations, and the determination thereof, are the

16  sole responsibility of the Class Member, and it is understood that the tax consequences may vary

17  depending on the particular circumstances of each individual Class Member.

18  **16.    GENERAL MATTERS AND RESERVATIONS**

19        16.1.   This Class Action Agreement will be binding upon, and inure to the benefit of, the

20  successors, transferees, and assigns of Volkswagen, the Class Representatives, and Class

21  Members.

22        16.2.   Volkswagen's obligation to implement the Class Action Settlement Program

23  described in this Class Action Agreement is and shall be contingent upon each of the following:

24              16.2.1.   Entry by the Court of the Final Approval Order approving the Class

25                        Action Settlement;

26              16.2.2.   The occurrence of the Effective Date; and

27              16.2.3.   The satisfaction of any other conditions set forth in this Class Action

28                        Agreement.

16.3.    The Parties and their counsel agree to keep the existence and contents of this Class

Action Agreement confidential until the date on which the Motion for Preliminary Approval is

filed; provided, however, that this Section shall not prevent Volkswagen from disclosing such

information, prior to the date on which the Motion for Preliminary Approval is filed, to state and

federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or

lawyers.  The Parties and their counsel may also disclose the existence and contents of this Class

Action Agreement to persons or entities (such as experts, courts, co-counsel, and/or

administrators) to whom the Parties agree disclosure must be made in order to effectuate the

terms and conditions of this Class Action Agreement.

16.4.    Class Representatives and Class Counsel agree that confidential information made

available to them solely through the settlement process was made available on the condition that

it not be disclosed to third parties (other than experts or consultants retained by Class

Representatives in connection with the Action).  Nevertheless, nothing contained herein shall

prohibit Class Representatives from seeking certain confidential information pertinent to this

Class Action Agreement through informal confirmatory discovery, even if not previously

requested through formal discovery.

16.5.    Information provided by Volkswagen, Volkswagen's Negotiating Counsel, and/or

the Settlement Master to Class Representatives, Class Counsel, any individual Class Member,

counsel for any individual Class Member, and/or administrators, pursuant to the negotiation and

implementation of this Class Action Agreement, includes trade secrets and highly confidential

and proprietary business information and shall be deemed "Highly Confidential" pursuant to the

protective orders that have been or will be entered in the Action, and shall be subject to all of the

provisions thereof.  Any materials inadvertently produced shall, upon Volkswagen's request, be

promptly returned to Volkswagen's Negotiating Counsel, and there shall be no implied or express

waiver of any privileges, rights and defenses.

16.6.    This Class Action Agreement, complete with its exhibits and all documents filed

with the Court, sets forth the entire agreement among the Parties with respect to its subject matter,

and it may not be altered, amended, or modified except by written instrument executed by Class

- 45 -

1    Counsel and Volkswagen's Negotiating Counsel on behalf of Volkswagen.  The Parties expressly

2    acknowledge that no other agreements, arrangements, or understandings not expressed in this

3    Class Action Agreement or the documents filed with the Court exist among or between them, and

4    that in deciding to enter into this Class Action Agreement, they have relied solely upon their own

5    judgment and knowledge.  This Class Action Agreement and the accompanying documents filed

6    with the Court supersede any prior agreements, understandings, or undertakings (written or oral)

7    by and between the Parties regarding the subject matter of this Class Action Agreement.

8        16.7.   This Class Action Agreement and any amendments thereto, and any dispute

9    arising out of or related to this Class Action Agreement, shall be governed by and interpreted

10    according to the Federal Rules of Civil Procedure and applicable jurisprudence relating thereto,

11    and the laws of the State of California notwithstanding its conflict of law provisions.

12        16.8.   Any disagreement and/or action to enforce this Class Action Agreement shall be

13    commenced and maintained only in the United States District Court for the Northern District of

14    California.

15        16.9.   Whenever this Class Action Agreement requires or contemplates that one of the

16    Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day

17    (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

18    If to Volkswagen, then to:

19        Sharon L. Nelles
        SULLIVAN & CROMWELL LLP
20        125 Broad Street
        New York, New York 10004
21        Email: nelless@sullcrom.com

22    If to the Class, then to:

23        Elizabeth J. Cabraser
        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
24        275 Battery Street, 29th Floor
        San Francisco, CA  94111
25

26        16.10. All time periods in this Class Action Agreement shall be computed in calendar

27    days unless otherwise expressly provided.  In computing any period of time in this Class Action

28    Agreement or by order of the Court, the day of the act or event shall not be included.  The last day

of the period shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which the court is closed, in which case the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Class Action Agreement, "Federal Holiday" includes holidays designated in Fed. R. Civ. P. 6(a) or by the Clerk of the United States District Court for the Northern District of California.

16.11.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Class Action Agreement.

16.12.  The Class, Class Representatives, Class Counsel, Volkswagen, and/or Volkswagen's Lead Counsel shall not be deemed to be the drafter of this Class Action Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter.  All Parties agree that this Class Action Agreement was drafted by counsel for the Parties during extensive arm's-length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Class Action Agreement was made or executed.

16.13.  The Parties expressly acknowledge and agree that this Class Action Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, related notes, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state or territory.

16.14.  The Class Representatives expressly affirm that the allegations contained in the Complaint were made in good faith, but consider it desirable for the Action to be settled and dismissed as to the Eligible Vehicles only because of the substantial benefits that the Settlement will provide to Class Members.

16.15.  The Parties agree that the Class Action Agreement was reached voluntarily after consultation with competent legal counsel.

16.16.  Neither this Class Action Agreement nor the Class Action Settlement Program, nor any act performed or document executed pursuant to or in furtherance of this Class Action Agreement or the Class Action Settlement Program is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any Released Parties; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Parties in any civil, criminal, regulatory, or administrative proceeding in any court, administrative agency or other tribunal.  Nor shall this Class Action Agreement or the Class Action Settlement Program be deemed an admission by any Party as to the merits of any claim or defense.

16.17.  Nothing in this Class Action Agreement limits or expands any existing rights of the Class or any Class Member or third party to: (i) challenge any action or decision made by EPA or CARB pursuant to, or during the implementation of, the DOJ Consent Decree; or (ii) assert a claim based upon an allegation of excessive emissions or OBD deficiencies from a vehicle that has undergone an Emission Modification approved by EPA and CARB under the DOJ Consent Decree.

16.18.  Any of the Released Parties may file this Class Action Agreement and/or the Final Approval Order in any action that may be brought against it in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16.19.  The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Class Action Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Class Action Agreement.

16.20.  The waiver by one Party of any breach of this Class Action Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Class Action Agreement.

16.21.  If one Party to this Class Action Agreement considers another Party to be in breach of its obligations under this Class Action Agreement, that Party must provide the

- 48 -

breaching Party with written notice of the alleged breach and provide a reasonable opportunity to

cure the breach before taking any action to enforce any rights under this Class Action Agreement.

16.22. The Parties, their successors and assigns, and their counsel agree to cooperate fully

with one another in seeking Court approval of this Class Action Agreement and to use their best

efforts to implement this Class Action Agreement and the proposed Class Action Settlement

Program.

16.23. This Class Action Agreement may be signed with an electronic or facsimile

signature and in counterparts, each of which shall constitute a duplicate original.

16.24. In the event any one or more of the provisions contained in this Class Action

Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect,

such invalidity, illegality, or unenforceability shall not affect any other provision if Volkswagen,

on behalf of Defendants, and Class Counsel, on behalf of Class Representatives and Class

Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable

provision had never been included in this Class Action Agreement. Any such agreement shall be

reviewed and approved by the Court before it becomes effective.

**List of Exhibits**

| Ex. # | Title |
|---|---|
| 1 | Settlement Benefits to Class Members |
| 2 | Short Form Notice |
| 3 | Long Form Notice |
| 4 | Class Claims Program and Administration |
| 5 | Individual Release of Claims |
| 6 | Estimated Settlement Payments to Owners and Lessees |

1  FOR CLASS COUNSEL

2  Date: July 26, 2016

3  _____

4  Elizabeth J. Cabraser
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
5  275 Battery Street, 29th Floor
   San Francisco, CA  94111

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| 1 | COUNSEL FOR VOLKSWAGEN AG, AUDI AG, AND VOLKSWAGEN GROUP OF |
|---|---|
| 2 | AMERICA, INC.: |

3

4  Dated: July __26__, 2016

5  Robert J. Giuffra, Jr.

6  Sharon L. Nelles
   William B. Monahan
   SULLIVAN & CROMWELL LLP

7  125 Broad Street
   New York, New York 10004

8  Telephone:   (212) 558-4000
   Facsimile:   (212) 558-3588

9  giuffrar@sullcrom.com
   nelless@sullcrom.com

10 monahanw@sullcrom.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28